UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NATIONAL AUTO WARRANTY )
SERVICES, INC., )
 )
    Plaintiff, )
 )
vs. ) Case No. 4:04CV1512MLM
 )
PAUL A. HART, )
 )
    Defendant. )

## **MEMORANDUM OPINION**

On November 4, 2005, the Clerk of the Court entered the default of defendant Paul A. Hart ("Hart") pursuant to Rule 55 of the Federal Rules of Civil Procedure. [Doc. 44] On November 18, 2005, a hearing was held to determine the amount of damages sustained by National Auto Warranty Services, Inc. ("plaintiff corporation" or "plaintiff"). Plaintiff corporation appeared through its President, Darain Atkinson, and its Chief Financial Officer, Phillip Jehle. Plaintiff corporation also appeared through counsel, Stuart I. Platt.

In spite of diligent efforts to locate defendant Hart and to secure his presence at the default hearing, defendant Hart failed to appear.

At the hearing pertaining to damages only, the court heard testimony from Mr. Darain Atkinson, President of plaintiff corporation, and Mr. Philip Jehle, Chief Financial Office of plaintiff corporation. The court also took judicial notice of the court's file, and received into evidence four exhibits on behalf of plaintiff corporation. After giving due consideration to the testimony, exhibits presented and having take judicial notice of the court file, the court finds as follows:

1.    Both parties have previously consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 626(c). [Doc. 11]

2.    This court has personal jurisdiction over both parties to this action, pursuant to 28 U.S.C. § 1332, and the amount in controversy exceeds $75,000.

3.    This court has proper venue pursuant to 28 U.S.C. § 1391.

4. Plaintiff, National Auto Warranty Services, Inc., is at this time and was at the time of the events leading to its cause of action, a corporation existing by virtue of and organized pursuant to the laws of the State of Missouri, with its principal place of business located within the County of St. Charles, State of Missouri.

5. Defendant Paul A. Hart, was at the time of all events alleged in this litigation, an individual residing in and a citizen of the State of Texas, and was at all times the President and sole executive officer with sole decision-making authority on behalf of co-defendant, Groupe HFC d/b/a Discount Warranties ("Discount Warranties"), conducting substantial and continuous business within the State of Missouri.

6. Plaintiff, at all relevant times, was engaged in the business of brokering and selling extended auto warranty service contracts on a retails basis, to the general public. It is the court's understanding that an extended auto warranty service contract is an insurance contract, which insures against mechanical defects existing in automobiles, which are insured pursuant to such contracts.

7. Defendant Hart, at all times relevant to this cause of action, was the President of Groupe HFC d/b/a Discount Warranties, was the sole executive of co-defendant Discount Warranties,, and had all discretionary decision-making authority with respect to co-defendant Discount Warranties, which was at that time in the business of brokering and selling extended auto warranty service contracts.

8. Between April and July of 2004, plaintiff, through its President, Darain Atkinson, entered into an oral agreement with defendant Hart, in his capacity as President and sole executive decision-maker on behalf of co-defendant Discount Warranties, to broker extended auto warranty contracts through co-defendant Discount Warranties. Plaintiff was to receive profit margins or commissions for the sale of each contract sold, less any cancellations.

9. The oral contract was governed by oral representations and through the course of conduct of the parties as reflected in plaintiff's Exhibits 1 and 2. Although there is no written agreement, the

court finds that there was proper consideration and mutual assent to the terms of the agreement, by which plaintiff was to receive on each contract brokered and not cancelled a commission or profit margin payment from co-defendant Discount Warranties.

10. Pursuant to the testimony of plaintiff's President, Darain Atkinson, co-defendant Discount Warranties offered established and fixed rates for extended automobile warranty contracts, which varied depending on the year and the make of the automobile insured, and plaintiff at all times was free to broker an extended auto warranty contract pursuant to its oral agreement with defendant Hart, for any amount received for sales of such contracts. The average commission earned by plaintiff on each contract sold, pursuant to plaintiff's Exhibits 1 and 2 was $1,790.22.

11. The course of conduct between the parties was premised upon representations made by defendant Hart, that any and all contracts brokered pursuant to the oral agreement confirmed by defendant Discount Warranties, and not cancelled, would result in payments of commissions to plaintiff corporation. In all, 621 contracts were brokered through co-defendant Discount Warranties, of which 220 were cancelled.

12. Pursuant to testimony given by plaintiff's President, Darain Atkinson, defendant Hart made representations to plaintiff corporation, through Mr. Atkinson, that plaintiff would be paid commissions by co-defendant Discount Warranties, for sales of extended auto warranty contracts throughout the course of dealing between the parties.

13. The representations made by defendant Hart to plaintiff, indicating that payment would be forthcoming, were false, and these representations were material to plaintiff's continued work and performance in connection with the oral agreement between the parties.

14. The court finds that defendant Hart knew of the falsity of these representations, and made these representations knowingly, even though they were false.

15. The court finds that the representations made to plaintiff through its authorized officer, Mr. Atkinson, were to be acted upon, in that defendant Hart intended for plaintiff to continue brokering

sales of extended auto warranty service contracts based on the representations that plaintiff would be paid its commissions or profit margins, from which plaintiff would profit.

16. The court finds that plaintiff, relying on defendant Hart's representations, that the plaintiff would be paid its commissions for sales of extended auto warranty contracts, was ignorant of the falsity of these representations made by defendant Hart, relied on the truth of these representations, and had a right to rely on them.

17. The court finds that the false representations made by defendant Hart, indicating that plaintiff corporation would be paid commissions or profit margins for the sale of extended auto warranty insurance contracts, was willful, malicious, and made in conscious disregard of the welfare of plaintiff corporation, for which defendant Hart should be punished.

18. The evidence adduced at trial further reveals that co-defendant Discount Warranties was paid all monies from their finance company (Mepco), in connection with sales brokered by plaintiff corporation through co-defendant Discount Warranties, and that subsequently, defendant Hart, who was the sole officer, shareholder and decision-maker of an executive nature for co-defendant Discount Warranties, absconded with the proceeds to Russia, and is currently under investigation by the Federal Bureau of Investigation in connection with this and other related matters.

19. The court further finds that the oral contract between the parties was ongoing and continuous, and that the oral agreement was confirmed by defendant Hart through payments which were made by defendant Hart to plaintiff on six occasions, pursuant to the exhibits presented by plaintiff at trial, in the total sum of $184,393.00 for commissions paid on 103 contracts sold, averaging $1,790.22 per contract.

20. A contract did exist between these parties, there was mutual assent and due consideration, and defendant Hart breached his oral contract with plaintiff by failing to pay the commissions to plaintiff for 298 contracts sold between April of 2004 and October of 2004, as brokered by plaintiff through co-defendant Discount Warranties.

21. The average profit margin on each contract sold is a fair basis upon which to determine the damage sustained by plaintiff pursuant to its oral agreement with defendant Hart as well as upon which to determine the damage sustained by plaintiff pursuant to the fraudulent misrepresentations made by defendant Hart on 298 contracts, for a total sum of $533,486.54 (see plaintiff's trial exhibits 1 and 2).

22. The amount of compensatory damage sustained by plaintiff as a result of defendant Hart's fraudulent misrepresentations and breach of contract between plaintiff and defendant is $533,486.54.

23. Because the court has found the existence of fraud and an oral contract between plaintiff and defendant Hart, which was breached by defendant Hart, plaintiff's claim for unjust enrichment pursuant to Count III of its Complaint is moot, and this claim will be dismissed.

24. Defendant Hart is liable for the representations made by him as officer of co-defendant Discount Warranties. Following default by defendant Hart upon the oral agreement reached between defendant Hart and plaintiff, plaintiff discovered that defendant Hart was contacting individual customers of plaintiff, without plaintiff's knowledge or permission, and was forwarding written correspondence through employees of co-defendant Discount Warranties (over which defendant Hart had total and uncontroverted control), to said customers of plaintiff, attempting to induce plaintiff's customers to cancel their existing contracts with plaintiff, and to contract directly with co-defendant Discount Warranties, or to renegotiate their contracts for extended automobile warranty contracts, directly with defendant Hart and/or co-defendant Discount Warranties.

25. In his attempts to induce plaintiff's existing customers to cancel their existing contracts with plaintiff, defendant Hart caused to be published and forwarded correspondence to existing customers of plaintiff, which contained defamatory and/or libelous language, more specifically as follows: "We have severed our ties with the affiliate National Auto Warranty Services, Inc. because of customer service issues we have encountered."

26. The court finds that no such customer service issues ever existed, and that no existing customer of plaintiff ever contacted plaintiff with respect to any customer service issue that had been allegedly encountered. Instead, the correspondence was an attempt not only to defame and libel plaintiff, but to induce plaintiff's customers to cancel their existing contracts, thus reducing the exposure of defendant Hart and/or co-defendant Discount Warranties to plaintiff for payment to plaintiff of commissions due on the contracts.

27. Plaintiff had a contract and valid business expectancy with co-defendant Discount Warranties and defendant Hart, and defendant Hart had knowledge of the contractual relationships between plaintiff and its customers.

28. Defendant Hart intentionally interfered with plaintiff's contracts and valid business expectancy, by inducing or attempting to induce a breach of the contractual business relationships between plaintiff and plaintiff's existing customers.

29. Defendant Hart had no justification for interfering with the business relationships between plaintiff and plaintiff's existing customers, nor for his attempts to induce a breach in the contractual relationships between plaintiff and plaintiff's existing customers.

30. Defendant Hart's conduct described in the paragraphs contained herein, was willful and malicious, and in conscious disregard of plaintiff National Auto Warranty Services, Inc.'s welfare, and should be punished.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff National Auto Warranty Services, Inc. shall recover from defendant Paul A. Hart, the cumulative sum of $533.486.54 as and for compensatory damages pursuant to Counts I, II, IV and V of plaintiff National Auto Warranty Services, Inc.'s Complaint.

**IT IS FURTHER ORDERED** that plaintiff National Auto Warranty Services, Inc. shall recover from defendant Hart, prejudgment interest at the rate of 9%, in the full sum of $72, 021.00.

**IT IS FURTHER ORDERED** that plaintiff National Auto Warranty Services, Inc., shall recover from defendant Hart, for his willful and malicious conduct pursuant to Counts II, IV and V of plaintiff's Complaint, punitive damages in the full sum of $500,000.00.

**IT IS FURTHER ORDERED** that Count III of plaintiff's Complaint is **moot** and is **Dismissed**.

**IT IS FURTHER ORDERED** that a separate Default Judgment shall issue contemporaneously herewith.

/s/Mary Ann L. Medler
**MARY ANN L. MEDLER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this    2nd    day of December, 2005.